# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-17-00360-001-PHX-JJT |
| Plaintiff, | **SUPERSEDING FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| v. | |
| Abdul Khabir Wahid, | |
| Defendant. | |

On March 14, 2017, the United States charged Defendant by Indictment with making a false statement during an investigation, in violation of 18 U.S.C. § 1001(a)(2), and tampering with a witness, in violation of 18 U.S.C. § 1512(b)(3). (Doc. 3.) The matter proceeded to a bench trial on February 26, 27 and 28, 2019. (Docs. 160-162.) The Court reopened the bench trial on November 5, 2019 to allow Defendant to cross-examine a witness he had not previously cross-examined. (Docs. 228, 238.) The Court now renders its Findings of Fact, Conclusions of Law and Verdicts as to the counts before it.

**FINDINGS OF FACT**

1. From at least early 2014 through May 3, 2015, Elton Simpson and Nadir Hamid Soofi lived in Phoenix, Arizona.
2. During this period, Defendant Abdul Khabir Wahid knew and associated with Simpson and Soofi, visiting both at their Phoenix residence multiple times.
3. On May 1, 2015, Simpson and Soofi drove to Defendant's Phoenix residence and

visited with him. During that visit, Simpson gave Defendant a key and an envelope, and instructed Defendant to deliver both to Sabir Nurse, another associate of Simpson, Soofi and Defendant.

4. Between May 1 and May 3, 2015, Simpson and Soofi drove to Garland, Texas from Phoenix, Arizona. On May 3, 2015, they approached an event at the Curtis Culwell Center in Garland, where a "draw the Prophet" contest or event was taking place, and began shooting at law enforcement and security personnel with assault rifles. Simpson and Soofi were killed in the exchange.

5. That day the Federal Bureau of Investigation ("Bureau") began an investigation into the attack on the Culwell Center by Simpson and Soofi. The investigation sought to determine, among other things, the motivation for the attack, whether it was connected to a terrorist organization, how it was designed, funded and carried out, and whether anyone else besides Simpson and Soofi were involved.

6. Bureau agents interviewed Defendant for the first time on May 6, 2015. During that interview, Defendant confirmed that Simpson and Soofi had come to visit him two days before the shooting on May 1, 2015. The agents asked Defendant what Simpson and Soofi discussed with him that evening, and Defendant told the agents that the only things the three discussed were Defendant's children, including that Defendant's son was a good Muslim and his daughters needed a good role model; the Islamic faith in general; and a container of soup that Simpson and Soofi had brought to Defendant.

7. Agents also asked Defendant if Simpson or Soofi had given him anything during the May 1 meeting. Defendant repeatedly told the agents the only thing the two had given him that evening was the soup, and nothing else. In response to the agents' questions, Defendant stated Simpson and Soofi didn't ask him for anything, didn't mention anything else and didn't give him anything except the soup.

8. The Court finds Defendant knew his statement was false. Simpson had given Defendant the key and envelope and instructed him to deliver it to Nurse just two

days before the Garland shooting. Defendant delivered the key and envelope to Nurse On May 6, three days after the shooting and the same day the FBI interviewed Defendant and he expressly denied Simpson or Soofi had given him anything, beyond soup, or made any requests of him. The Court also finds Defendant made that false statement willfully, meaning he knew it was unlawful to make such false statement to agents and made it anyway. At trial, the government introduced a recorded statement of Defendant in which he was advised and acknowledged at the outset of his May 6, 2015, interview that lying to the Bureau about a material matter during an investigation is a crime.

9. The investigation into the attack on the Curtis Culwell Center was a matter within the jurisdiction of the Bureau. The Bureau is a department of a federal agency. It is tasked with investigation of federal offenses, and specifically terroristic acts and crimes crossing interstate boundaries.

10. Defendant's May 6, 2015, statement to FBI agents denying that Simpson or Soofi had given him anything beyond soup or asked him for anything was material. Because of Defendant's false statement on May 6, agents were delayed for weeks in learning that the shooters entrusted items to him and directed him to deliver the items to Nurse. That delay not only caused agents to apply scarce investigative resources to hunt for "needles in haystacks," but also delayed potential seizure of physical evidence which may have led to discovery of other aspects of—and participants in—the Garland shooting or associated plans. Conversely, the information may have led to ruling out other persons as participants and a more focused investigation. In summary, Defendant's false statement resulted in the misdirection of investigative assets and delay in investigative progress until agents learned of the key, envelope and delivery through other sources more than a month later, on or about June 10, 2015.[1] Such delay in turn resulted in agents' failure to

---

[1] This date was the focus of Defendant's cross-examination of SA Stewart Whitson, and subsequent argument for acquittal, at the reopening of the bench trial on November 5, 2019. The entirety of Defendant's presentation at the re-opened bench trial consisted of questioning SA Whitson to confirm that: 1) Defendant told other FBI agents in June 2015

recover some evidence which was disposed of in the interim.

11. The Garland shooting carried out by Simpson and Soofi on May 3, 2015—the matter investigated by the Bureau—constituted activities involving violent acts or acts dangerous to human life that are a violation of the laws of the United States and the States of Texas and Arizona.

12. That matter was intended to intimidate a civilian population, and to influence the

---

that after Elton Simpson was killed executing the Garland attack, Defendant had delivered the key and title to Simpson's car to Sabir Nurse, who then conveyed it to Simpson's father; but that 2) SA Whitson nonetheless testified the FBI did not know until November 2015 that this had in fact happened. From this evidence, Defendant argued that SA Whitson had made inconsistent statements under oath, and thus the Court, as finder of fact, should find SA Whitson's testimony not credible for purposes of establishing the elements of the offenses charged.

The Court declines Defendant's invitation to so conclude, and findings or conclusions are not affected by Defendant's presentation, for several independent reasons. First, SA Whitson's statements are not inconsistent. During cross-examination, Defendant asked SA Whitson if he could "explain the discrepancy" between the two statements at issue. SAWhitson did just that, testifying that

> …the first time we [FBI] heard this might be the case [that Defendant had given the title and key to Nurse] was when you [Defendant] told us on June 10, but you told us a lot of different things before that that didn't turn out to be true. So then on November 30 when we found out conclusively that the father [of Elton Simpson] had received the title, only then did it become clear that that was the reality of what had actually happened, because we were able to corroborate something that you told us…I think that's exactly what I said during the trial in the transcript."

(Tr. 11/05/19 at 18;18 – 19: 4.)

Second, even if the Court concluded that the two statements were in fact inconsistent, such an inconsistency is not material to the elements of proof of either charged offense. Whether the FBI learned about Defendant's falsehood in June 2015, and therefore was delayed in its follow-up investigation of what happened to the car title for one month, or it learned about the falsehood in November of that year and was delayed in following up for five months, the elements of a false statement are all still met: the only difference is the extent of potential damage to causing a one-month delay versus a five-month delay to the follow-up investigation tracking asset transfers among potential participants.

Finally, even if the Court concluded the witness made a material misstatement under oath and his credibility was suspect, such conclusion would not impact the admissibility of the audio recordings of Defendant 1) making the material false statements to agents in May 2015; 2) admitting such falsehood to agents in June 2015; and 3) attempting to dissuade Ali Soofi from talking to the Bureau in the first place and from telling the truth to the Bureau. Nor would such a finding affect the sufficiency of those recordings to prove the elements of the Section 1001 and 1512 charges, as they did.

policy of the United States government by such intimidation or coercion. The government demonstrated through Simpson's social media accounts that he was in contact with individuals identified by the United States government as recruiters and organizers within the Islamic State, or ISIS, an entity recognized by the United States as a sponsor of international terrorism. Expert testimony adduced at trial demonstrated that ISIS exercised a coordinated program to recruit volunteers to commit violent acts in their home nations, or elsewhere, to make the local population feel unsafe from ISIS at home and thereby create political pressure to change government policy toward ISIS and its aims. Records seized from Simpson's own social media accounts demonstrate he was in communication with Muhajir Miski and Junaid Hussein, whom the government's expert definitively identified as ISIS recruiters, among other functions. Additionally, ISIS used the Garland shooting to publicize its ability to reach into the United States to commit acts of violence, including making it the subject of an article in its *Dabiq* on line magazine and acknowledging the Garland attack was carried out on its behalf. Finally, Simpson's own social media statements on Twitter included a pledge of allegiance to ISIS just before the Garland attack.

13. The matter transcended national boundaries in terms of the means by which it was accomplished, in that Simpson received encouragement, guidance and direction from the aforementioned ISIS members. Those individuals are prohibited from entering the United States and therefore by definition provided that encouragement, guidance and direction across national boundaries.

14. The matter also transcended national boundaries in that the keynote speaker at the Garland event—one of the persons the attack was intended to intimidate or coerce— was a Dutch national. Simpson's social media feed, as introduced at trial by the government, included his statement of a desire to avenge the insult to the Prophet that the Garland contest represented, by those who participated in that insult.

15. The Court therefore finds the false statement at issue involves international

terrorism as defined in 18 U.S.C. §2331.

16. The Court further finds Defendant was aware as of May 6, 2015, when he first spoke to agents, that the matter the agents were investigating involved international terrorism. Defendant was aware at that time that Simpson and Soofi had attacked the "Draw the Prophet" event in Garland with multiple automatic weapons and died in a firefight. He was aware they had left with him the means to dispose of Simpson's vehicle just before they left for Garland, indicating they did not expect to survive or return. He was aware from visits to Soofi's and Simpson's apartment that they frequently watched ISIS videos of beheadings, live immolations and other terroristic violence, and had seen that they kept assault weapons at that apartment and therefore had them available. He had heard Simpson express a desire to avenge insult to his faith. And he had previously been invited by Simpson to participate in an armed attack on a United States military facility in support of ISIS.

17. On May 4, 2015, the morning after the Garland attack, Defendant began contacting acquaintances to obtain the mobile telephone number of Ali Soofi ("Ali"), the brother of Nadir Soofi. Defendant obtained the number and spoke to Ali that day. Over the following two months, Defendant called and spoke to Ali at length several times, including in four telephone calls that were recorded on June 6, 7 and 18, and July 8, 2015. The recordings were introduced into evidence at trial and both Ali and Defendant testified to the contents of the unrecorded conversations.

18. In the recorded conversations, Defendant repeatedly urged Ali at times not to talk to the FBI at all, and at other times to limit or omit information shared with agents. Additionally, Defendant was heard in multiple recordings instructing Ali to tell agents things that Ali protested were false. This included Defendant's instruction to tell agents that Defendant had either never been to Soofi and Simpson's apartment or had only been there once, or twice, when in fact Ali had seen Defendant there quite regularly—one to three times a week, as he testified at trial; Defendant's instruction not to tell the FBI that he or others had ever watched ISIS execution and

related videos together at Soofi's and Simpson's apartment when in fact Ali had witnessed same; and his instruction to tell agents Ali had no knowledge that Defendant had ever seen firearms at the apartment, even though Ali had witnessed Defendant present where automatic firearms were on open display.

19. The Court finds from the above referenced evidence that Defendant attempted to persuade Ali, with the intent to hinder, delay or prevent communication to a law enforcement officer of information relating to the commission of a federal offense. Ali, by virtue of living in the apartment with his brother and Simpson, and witnessing the comings and goings of Defendant and others, the presence of assault weapons, the communal viewing of ISIS videos and the conversations among participants, had information relating to the Garland attack, any conspiracy to support or abet it, and any false statements Defendant made to agents investigating the former.

20. The Court finds as fact that Defendant's attempts to persuade Ali not to communicate information to the FBI were made both knowingly and with corrupt intent. Based on the knowledge the Court already has found Defendant possessed at the time he spoke to Ali, the Court finds that the information Defendant attempted to have Ali convey to the agents was both false and would have the effect, if believed, to allow Defendant and others to avoid scrutiny for actions they had in fact taken.

**CONCLUSIONS OF LAW**

1. A person violates 18 U.S.C. § 1001 when that person knowingly and willfully makes a materially false statement or representation in a matter within the jurisdiction of the executive branch of the United States.

2. As set forth above, the Court has found as a matter of fact that Defendant's statement to agents of the Federal Bureau of Investigation—an agency within the executive branch of the United States—that he did not discuss anything with Simpson and

Soofi during their May 1, 2019 visit at Defendant's residence beyond 1) Defendant's children; 2) his son being a good Muslim; 3) his daughters' need for a good role model; 4) the Islamic faith in general; and 5) a container of soup that Simpson and Soofi had brought to Defendant, and that Simpson and Soofi did not give Defendant anything at that meeting except the soup, was a false statement and representation.

3. For the reasons set forth above, the Court found that such false statement was material, and indeed had a material effect on the agents' ability to timely investigate the Garland attack and related activity by Simpson, Soofi and any associates. Likewise, the Court found that Defendant knowingly and willfully made the material false statement.

4. The government alleged that the Defendant made the false statement at issue on or about May 6, 2015, in the District of Arizona, and the Court finds that allegation as to time and place proven beyond a reasonable doubt as well. The government has therefore shown jurisdiction and venue in this matter over Count I.

5. For the reasons set forth in the Findings of Fact section above, the Court also concludes Defendant made the false statement alleged in a matter and during an investigation involving international terrorism.

6. The government having proven all elements of Section 1001(a)(2), the Court finds Defendant guilty of that charge.

7. Defendant argued at trial that he eventually admitted to agents his prior statement was untrue, and that Simpson had given him a key, an envelope and instructions for delivery of same during their May 1 meeting. That does not impact the conclusion that Defendant made a materially false statement to the agents on May 6, 2015, that the false statement had the effect of hindering the agents' investigation into the terror attack at Garland on May 3, 2015, that Defendant waited more than a month to correct his false statement to agents, doing so only when the agents returned and confronted him about it, at a point when he knew they had been informed from other sources about the falsity of the statement and the facts that made it false.

8. A person violates 18 U.S.C. § 1512(b)(3) when the person knowingly attempts to persuade another from communicating to law enforcement officers relating to the commission of a federal offense, and does so corruptly—that is, with the purpose of wrongfully impeding the due administration of justice.

9. As set forth in the Findings of Fact above, the Court found that over the course of several phone calls outlined above and at trial, Defendant knowingly tried to persuade Ali not to communicate with agents of the Federal Bureau of Investigation relating to a federal offense. In this case, the government demonstrated that Defendant attempted to hinder communication about his own false statement offense. The government also showed Defendant attempted to hinder Ali's communication about Nadir Soofi's and Elton Simpson's attack on the Culwell Center in Garland. Both are federal offenses.

10. The Court concludes that Defendant's attempts to hinder communication were done corruptly, in that his goal was to conceal from investigators the falsity of his prior statements to them, his level of contact with Simpson and Soofi, his knowledge of their activities, and the involvement of others with Simpson and Soofi.

11. Finally, the government alleged that the Defendant made his attempts to hinder Ali Soofi from communicating with investigators between May 5 and July 8, 2015, in the District of Arizona, and the Court has found those allegations as to time and place proven beyond a reasonable doubt as well.  The government has therefore shown jurisdiction and venue in this matter over Count II.

12. The government having proven all elements of Section 1512(b)(3), the Court finds Defendant guilty of that charge.

The Court having found Defendant guilty on Counts I and II of the Indictment, and a Final Pre-Sentence Investigation Report already having been prepared in this matter, which report is not impacted by the re-opening of the bench trial or by these Findings and Conclusions,

**IT IS ORDERED** setting the matter for a <u>Sentencing hearing on December 17, 2019, at 2:00 P.M. in Courtroom 505, 401 West Washington Street, Phoenix, AZ 85003.</u>

**IT IS FURTHER ORDERED** denying Defendant's "Motion for Absolute Discharge of Conviction Due to Illegal Enforcement of Statutes 18 U.S.C. § 1001 and 18 U.S.C. § 1512 and 18 U.S.C. § 242 Deprivation fo Rights Under Color of Law and Breach of Tr4ust/29 U.S.C. § 1109 Breach of Fiduciary Duty and Constructive Fraud" (Doc. 211).

Dated this 7th day of November, 2019.

_____
Honorable John J. Tuchi
United States District Judge