MICHAEL BAILEY
United States Attorney
District of Arizona

KRISTEN BROOK
Assistant U.S. Attorney
Arizona State Bar No. 023121
JOSEPH E. KOEHLER
Assistant U.S. Attorney
Arizona State Bar No. 013288
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Joe.Koehler@usdoj.gov
Email: Kristen.Brook@usdoj.gov
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Abdul Khabir Wahid,<br><br>　　　　Defendant. | CR-17-00360-PHX-JJT<br><br>**CONSOLIDATED RESPONSE TO DEFENDANT'S POST-JUDGMENT MOTIONS** |

　　　　Defendant Wahid has filed three *pro se* post-judgment motions (Docs. 293, 294, 295), all of which seek relief that the Court no longer has jurisdiction to grant.

　　　　This Court should deny Wahid's Motion for Pole Camera Footage (Doc. 293) for lack of jurisdiction and as a document improperly filed *pro se*, as explained more fully below. Similarly, the Court should deny Wahid's Motion to Remove Attorney (Doc. 294) for lack of jurisdiction. Wahid must file this motion in the Court of Appeals for the Ninth Circuit, and the government will take no position on the substance of the motion in that court. Finally, the Court should deny Wahid's Emergency Motion for Home Detention (Doc. 295) for lack of jurisdiction and as improperly filed *pro se* when Wahid has court-appointed counsel. If the Court construes it as a motion for release pending appeal and

elects to consider the motion in spite of the improper filing, the Court still should deny the motion on the merits.

## I. This Court Lacks Jurisdiction

None of Wahid's motions addresses the issue of this Court's jurisdiction. Wahid's filing of his Notice of Appeal (Doc. 291) divested this Court of jurisdiction with very limited exceptions. *See United States v. Najjor*, 255 F.3d 979, 983 (9th Cir. 2001) (appeal from final judgment divests district court of jurisdiction to enter second sentencing order). One of those exceptions is a motion for release pending appeal. Fed. R. App. P. 9(b). Another would be a motion to correct a technical, arithmetic, or other clear error in the sentence/judgment. Fed. R. Crim. P. 35(a); *See* Fed. R. App. P. 4(b). Another is a timely motion for new trial, although such a motion based on newly-discovered evidence would require a remand of jurisdiction for the Court to act on the motion. *See* Fed. R. Crim. P. 33.

Wahid's post-judgment (and post-appeal) motions do not fall within the aforementioned exceptions. His Motion for Pole Camera Footage is a discovery motion that clearly falls outside the scope of the Court's limited post-appeal jurisdiction.[1] Similarly, Wahid's Motion to Remove Attorney is not within the Court's post-appeal jurisdiction, although if the Court of Appeals grants such a motion on appeal, this Court will be directed to appoint new counsel.

---

[1] Wahid previously filed a similar motion (Doc. 269). As the government explained at sentencing on March 3, 2020, the pole camera surveillance images were disclosed to Wahid prior to trial. The government offered Wahid the opportunity to view the video footage, but Wahid did not avail himself of that opportunity. In addition, prior to sentencing, the government emailed defense counsel to confirm prior receipt of the requested discovery, which had been disclosed on February 19, 2019, at Bates #5203-5288. (Attachment 1.) The government notes for the record that the pole camera at the Simpson/Soofi apartment was activated the day Simpson and Soofi left for the attack (May 1, 2015). It started capturing footage of the West entrance to the apartment building around 2:00 pm on May 1, and was deactivated on May 4, 2015. Nothing in the footage had any bearing on the charges in this case, which were based entirely on conduct that occurred after the attack on May 3, 2015. Thus, the video footage did not capture footage "a week prior till the day Elton Simpson and Nadir Soofi left for Texas," as Wahid suggests in his motion. (Doc. 293). The camera was activated mere hours before Simpson and Soofi left for Texas.

Finally, Wahid's Emergency Motion for Home Detention is a substantive motion to alter his sentence, not a motion for bail pending appeal. Wahid's is not merely seeking release pending appeal; he is seeking a substantive alteration of his sentence to impose home confinement in lieu of imprisonment. Wahid's motion states, in full:

> During my sentencing I wanted to speak out but I held back. During my sentencing the only thing I was thinking about was your honor how could you sentence me to 5 years knowing that I have A.I.D.S and that the corona virus was on the rise, potentially you could possibly be sentencing me to a death sentence.
>
> Seeing now that the virus has reached Arizona it is just a matter of time it will reach the detention center and other prisons in Arizona. Should it make it's [sic] way to Florence Dention [sic] Center and begin to spread by me still in the range of having A.I.D.S I know it would instantly end my life. Therefore I am asking you your honor for mercy and please, please release me to Home Detention that way if I'm isolated and not around a lot of people I have a less likely chance of contracting the corona virus. Please, please help me your Honor.

(Doc. 295 at 1-2).

Wahid's motion makes clear he is seeking a substantive change to his sentence, not merely release pending his appeal of his conviction and sentence. Therefore, this Court lacks jurisdiction over the motion and should deny it on that basis.

## II. Wahid's *Pro Se* Filings Are Improper

Wahid filed his post-judgment motions *pro se*, even though he still has court-appointed counsel. His filings are improper and should be stricken. LRCiv 83.3(c)(2)[2] bars the *pro se* filing of documents by a party who has appeared through counsel.

> Whenever a party has appeared by an attorney, that party cannot thereafter appear or act in that party's own behalf in the cause, or take any steps therein, unless an order of substitution shall first have been made by the Court after notice to the attorney of each such party, and to the opposite party. The attorney who has appeared of record for any party shall represent such party in the cause and shall be recognized by the Court and by all the parties to the cause as having control of the client's case, in all proper ways, and shall, as such attorney, sign all papers which are to be signed on behalf of the client, provided that the Court may in its discretion hear a party in open court,

---

[2] LRCrim 57.14 makes clear that LRCiv 83.3 governs appearance, withdrawal, and substitution of counsel, and control of the cause. Likewise, LRCrim 12.1 makes clear that LRCiv 7.2 governs the form of papers filed in criminal cases in this Court.

- 3 -

>     notwithstanding the fact that that party has appeared or is represented by an attorney.

LRCiv 83.3(c)(2). The Court previously struck *pro se* filings Wahid made while represented by counsel (Doc. 26) and should do the same here.

In addition, Wahid failed to provide a legal memorandum in support of his motions. Therefore, they are not in compliance with LRCiv 7.2(b) and subject to summary denial under LRCiv 7.2(i).

### III. Liberally Construed as a Motion for Release Pending Appeal, Wahid's Emergency Motion for Home Detention Fails

Even if liberally construed as a motion for release pending appeal, Wahid's Emergency Motion for Home Detention lacks merit. Wahid has failed to show he is not flight risk, and has not identified any substantial question of law or fact that if he prevails on appeal, would likely result in a new trial. Wahid's speculative argument based on the prospect of a COVID-19 outbreak at CoreCivic does not warrant his release. Wahid has not established he is at any greater risk of contracting COVID-19 inside CoreCivic than he is outside CoreCivic.

A. <u>Factual background</u>

Defendant was convicted of Count 1, False Statements with the terrorism enhancement, for violating Title 18, U.S.C. §1001(a)(2), and Count 2, Witness Tampering for violating Title 18, U.S.C. §1512(b)(3), following a bench trial. The Court ultimately entered its guilty verdict on November 8, 2019. (Doc. 290.) Prior to sentencing, Wahid moved for home detention multiple times, and separately moved for downward departure based on issues similar to those he sets forth in the present motion. (Doc. 242, 248, 262 & 278). Wahid asserted the same claim in his "Emergency Request for release of Custody in Place of an Ankle Bracelet." (Doc. 222). This Court rejected Wahid's arguments (Doc. 290), and should do so again here.

On March 3, 2020, the Court sentenced Wahid to 67 months of imprisonment on Counts 1 and 2, to run concurrently, followed by three years of supervised release. (*Id.*)

Wahid remains in custody and presently is housed at CoreCivic. On March 16, 2020, Defendant filed his Notice of Appeal to the Ninth Circuit. (Doc. 291).

B. <u>Wahid bears the burden of establishing his eligibility for release.</u>

The Bail Reform Act establishes a presumption of detention pending appeal, and a defendant bears the burden of establishing he meets the requirements for release. See 18 U.S.C. § 3143(b); Fed. R. Crim. P. 46(c); see also *United States v. Montoya*, 908 F.2d 450, 451 (9th Cir. 1990). Under 18 U.S.C. § 3143(b)(1), Wahid must be detained unless he proves:

(1) by clear and convincing evidence he is not likely to flee or pose a danger to the safety of any other person in the community if released;

(2) his appeal is not for the purpose of delay;

(3) his appeal raises a substantial question of law or fact; and

(4) if that substantial question is determined favorably to him on appeal, that decision is likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

See also *United States v. Handy,* 761 F.2d 1279, 1283 (9th Cir. 1985).

Under the third element, a "substantial question of law or fact" is a question "that is fairly debatable or fairly doubtful." *United States v. Wheeler*, 795 F.2d 839, 840 (9th Cir. 1986). This standard reflects Congress's intent to "toughen the law" and "make[] it considerably more difficult for a defendant to be released on bail pending appeal." *Handy*, 761 F.2d at 1283. Accordingly, a defendant must present a question "of more substance than would be necessary to a finding that it was not frivolous." Id. (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)); see also *United States v. Villagomez*, 708 F. Supp. 2d 1105, 1118 (D. N. Mar. I. 2010) (whether a question is substantial "is a function of the novelty of the question, the extent to which contrary views are possible, and the extent to which clarification of the issue would be helpful to the administration of justice, all tempered by the lack of frivolousness of the issue"). In order to prevail on this fourth

element, a defendant need not prove he will succeed on appeal, but must identify "a non-frivolous issue that, if decided in [his] favor, would likely result in reversal or could satisfy one of the other conditions." *United States v. Garcia*, 340 F.3d 1013, 1021 n.5 (9th Cir. 2003).

Wahid has not met his burden under § 3143(b) because: (1) he has not shown by clear and convincing evidence that he is not likely to flee and (2) he has not identified any substantial question of law or fact likely to result in a new trial.

C. <u>Wahid has not demonstrated by clear and convincing evidence he is not likely to flee.</u>

Wahid has not shown he is unlikely to flee, especially given the lengthy sentence imposed, his prior flight from this Court, his flagrant disregard of this Court's authority and his failure to accept responsibility for his crimes. Wahid repeatedly has defied the Court's authority, contested the Court's jurisdiction over him, broken his promises to this Court, and ultimately revoked his acceptance of responsibility for his offenses. (Doc. 250.) Wahid is a flight risk – he failed to appear at sentencing in August 2019, and changed his residence without notice in order to avoid apprehension.

Wahid's underlying conduct for which he stands convicted, lying to the FBI in the midst of a terrorism investigation and attempting to corruptly persuade a critical witness to withhold information from the FBI, demonstrates his word is unreliable and that he is a flight risk. He has never acknowledged his culpability for his crimes. (*Id.*) Defendant's motion fails because he has not demonstrated – by clear and convincing evidence – that he is not a flight risk.

D. <u>Wahid has not raised a substantial question of law or fact likely to result in reversal, a new trial, or a reduced sentence.</u>

The Court should deny Wahid's motion for the additional and independent reason that his motion raises no "fairly debatable" or "fairly doubtful" question of law or fact likely to warrant a new trial, reversal, or a reduced sentence on appeal. As an initial matter,

Wahid simply has not provided any information from which the Court can make an informed ruling on this issue. He offers no facts or law to suggest a meritorious issue he intends to raise on appeal. Simply stated, the Court "cannot evaluate the merits of arguments that have not been set forth." *Montoya*, 908 F.2d at 451 (denying § 3143(b) request when issues were noted "only summarily" in "vague presentations"). None of the issues summarily mentioned in Defendant's motion – the potential for a COVID-19 outbreak in CoreCivic and its potential effect on Wahid – is a substantial question of law or fact that is likely to result in reversal, an order for a new trial, or a reduction in Wahid's sentence.

Setting aside the legal insufficiency of Wahid's argument, as a factual matter, Wahid fails to demonstrate he is at greater risk while housed at CoreCivic than he would be if released into the community. Wahid has not alleged any change in his physical condition since his sentencing on March 3, 2020. Wahid suggests a possibility that he could become infected by another person at CoreCivic. Currently, however, CoreCivic has no reported cases of COVID-19 within the facility at which Wahid is housed.[3] On March 31, 2020, one inmate had symptoms of illness and was tested for COVID-19 after leaving CoreCivic for transfer to BOP. The inmate was found to be negative for COVID-19 on April 3, 2020. As to employees, a nurse who exhibited symptoms upon return from a cruise in early March tested positive. The nurse was out for 14 days and then was cleared to return to work. Even if this Court could weigh such a speculative risk and properly balance it against the risk of Wahid's becoming infected in the community, Wahid's concern about potential exposure does not warrant release.

CoreCivic has protocols in place regarding COVID-19 with respect to prevention, identification, treatment, surveillance, isolation, testing and protecting the uninfected.

---

[3] CoreCivic initially provided this information to the United States Attorney's Office on March 19, 2020, but regularly confirms and updates the information. This information is current as of the April 9, 2020, update from CoreCivic.

CoreCivic has implemented numerous measures to minimize the risk of COVID-19 transmission into and within its facilities, including, but not limited to, the following:

(1) New inmates are being screened by having a full set of vitals taken, which includes checking temperatures, assessing possible symptoms (flu-like symptoms, coughing) and "chronic care" needs, along with completing an in-depth health inquiry. Based on this intake screening, new inmates will be quarantined, if necessary.

(2) Nurses are screenings inmates in the cellblocks in Phoenix and Tucson: testing temperatures, checking whether an inmate had an upper respiratory infection within the last 14 days and inquiring about known exposures. If they determine someone poses a risk, that inmate will be masked and possibly quarantined.

(3) Based on guidance from the Centers for Disease Control and Prevention ("CDC"), CoreCivic has identified a "high risk" watch list of inmates. The facility will be keeping a close eye on these inmates. Some of these "high risk" inmates may already be in the infirmary. An inmate will not be moved just because he/she is identified as "high risk." For example, just because an inmate is HIV positive, he/she may not be included on the list or isolated, instead, the decision is based on the individual inmate's current health situation.

(4) CoreCivic has increased sanitization measures to be more comprehensive and more frequent in accordance with CDC guidelines.

(5) All inmates are being instructed on CDC guidelines to prevent transmission of COVID-19, including the importance of frequent hand washing, covering coughs, not touching the face, etc.

(6) Inmates are being tested before they leave a facility to go to court, and if they register a temperature greater than 100.4 F, they are not transported to court.

(7) CoreCivic is following CDC recommendations. They are coordinating with local health and fire departments and have contingency plans in place with local hospitals.

Taken together, these measures are designed to sharply mitigate the risks of COVID-19 transmission. The Court should not substitute Wahid's speculative concerns for the clear and convincing showing he is required to make under 18 U.S.C. § 3183. *Cf.*, *United States v. Martin*, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020) (rejecting similar argument in the context of pretrial release noting that "as concerning as the COVID-19 pandemic is," the court's consideration "must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act.").

Finally, it does not appear that Wahid is at any greater risk of contracting COVID-19 inside CoreCivic than he is outside CoreCivic. Wahid has not provided any information to support his claim that in home detention he would "have a less likely chance of contracting the corona virus." (CR. 295) Defendant did not submit affidavits from any of his three adult children, with whom he presumably would reside, to establish that they are self-isolating or practicing social distancing. Defendant's speculative claim that he is at higher risk of contracting COVID-19 in prison (without specifics as to his condition or the facility where he is being held) "applies equally to every detainee in detention; however, the Court cannot release every detainee at risk of contracting COVID-19 because the Court would then be obligated to release every detainee. Therefore, the Court finds Defendant's COVID-19 argument unpersuasive." *United States v. Fitzgerald*, No. 217CR00295JCMNJK, 2020 WL 1433932 (D. Nev. Mar. 24, 2020).

### IV. Conclusion

The Court lacks jurisdiction to consider Wahid's post-judgment motions. In addition, Wahid improperly filed them *pro se* while represented by counsel, and did not provide facts and law to support the motions as required by the Local Rules of this Court. Further, Wahid has not satisfied his burden under § 3143(b) because he has not shown by clear and convincing evidence that he is not likely to flee, and also failed to raise any substantial question of law or fact likely to result in reversal, a new trial, or reduction of his sentence. For all the foregoing reasons, the Court should deny Wahid's post-judgment motions (Docs. 293, 294, 295).

Respectfully submitted this 9th day of April, 2020.

        MICHAEL BAILEY
        United States Attorney
        District of Arizona

        */s Kristen Brook*
        */s Joseph E. Koehler*
        KRISTEN BROOK
        JOSEPH E. KOEHLER
        Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and that true and accurate copies have been transmitted electronically to counsel for the defendant via the ECF system.

John McBee, Counsel for Defendant

*s/ Joseph E. Koehler*
U.S. Attorney's Office